ALBANY,
February, 1809.

TILLMAN *against* LANSING, Sheriff of Rensselae:
County.

Tillman
v.
Lansing.

THIS was an action of *debt*, for a *voluntary escape*. The cause was tried at the *Albany* circuit, in *April*, 1808, when a verdict was found for the plaintiff, subject to the opinion of the court, on the following case.

In *May* term, 1807, the plaintiff obtained a judgment in this court, against *Joseph B. Comstock* and *Samuel Comstock*, for 200 dollars, debt, and 8 dollars and 88 cents, costs. On the 11th *May*, a *ca. sa.* was issued against them upon the judgment, returnable in *August* following, on which they were taken by the sheriff of *Rensselaer* county, and held in his custody. The prisoners gave security to the sheriff for the *liberties* of the prison, and were in custody within the *limits* of the prison. On *Sunday*, the 8th *November*, 1807, before the commencement of this suit, both the prisoners were at church in *Lansingburgh*, about three miles without the limits of the prison, where they were seen by a deputy-sheriff, who resided in the same house with the sheriff. On the preceding *Sunday*, one of them had been seen by the sheriff himself, without the limits; and it appeared that they were in the habit of going out of the prison limits, on *Sundays*, to attend church at *Lansingburgh;* but always returned within the limits on the same day, and this was known to the sheriff; that they never left the limits, at any other time, except on *Sundays*, and were still in custody within the limits, when the present suit was commenced.

It was agreed, that if the court should be of opinion that the sheriff was liable for an escape, then a judgment was to be entered for the plaintiff, otherwise a nonsuit was to be entered.

*Allen*, for the plaintiff. 1. This is a voluntary escape for which the sheriff is liable. A voluntary escape is where

Where a prisoner in execution, on giving security to the sheriff, was allowed the liberties of the gaol, and went beyond the limits, on *Sundays*, returning again in the evening, it was held, that the sheriff had no power to restrain the prisoner after he had given the security required by the statute, and that this was neither a *voluntary* nor *negligent* escape; yet it was such an escape under the statute relative to gaol liberties, as could not be purged by a voluntary return of the prisoner before a suit brought, and rendered the sheriff liable in the first instance, and that he must resort to the bail for his indemnity, as the bond was not made assignable.

ALBANY,
February, 1809.

Tillman
v.
Lansing.

* *Impey's She-*
*riff,* 199, 200.
*Cases temp.*
*Hardw.* 310, 311.
† 1 *Bos. & Pull.*
24.
‡ *Impey's She-*
*riff,* 204.  2
*Term Rep.* 126.

¶ 2 *W. Bl. Rep.*
1048.
** 3 *Term Rep.*
392.

the prisoner is suffered to go at large, by the consent or permission of the officer. This consent may be implied as well as express : as where the prisoner is entrusted with the keys of his prison, or is made turnkey, and goes out and returns ;* or where a prisoner in execution is permitted to go about attended by a follower.† So if a prisoner goes without the liberties or rules of prison, with the knowledge of the sheriff, it is a voluntary escape.‡ If the defendant who has been taken in execution, is seen at large, even before the return of the writ, and for the short-est time, it is an escape.¶ Where there has been a voluntary escape, there can be no recaption.**

2. If this is not a voluntary escape, still it is such an escape under the statute, as renders the sheriff liable. By

†† *Rev. Laws,*
v. 1. p. 212.

the 18th and 20th sections of the act†† concerning sheriffs, &c. if any person arrested or committed to prison on execution, be suffered to go out of prison or be at large, without the consent of the plaintiff, it is declared to be an escape, and the plaintiff may recover the amount of the execution, by an action of debt against the sheriff. By the

‡‡ *Rev. Laws,*
v 1. p. 359, 360.

5th and 6th sections of the act relative to gaols,‡‡ in which the *liberties* are regulated, it is expressly provided, that nothing in the act should be construed to exonerate the sheriffs, in case the prisoners shall escape, or go at large without the limits, established for the liberties of the gaol. The liberties are nothing more than the extension of the four walls of the prison, and the doctrine as to escapes applies now, as well as before the establishment of liberties. The law, while it is very strict against sheriffs, has provided for their security and indemnity. A sheriff is not obliged to permit a prisoner to go within the liberties, until he has executed a bond with sufficient sureties, that he will not escape or go beyond the limits ; and if the sheriff, at any time, should discover the security he has taken to be insufficient, he may confine the prisoner in close custody, until he gives further and sufficient bail.

*Van Vechten,* contra. The only question is, whether there was a voluntary escape. If the sheriff had no power

to refuse the liberties of the gaol to the prisoner, on his tendering a sufficient bond of indemnity, nor to put the prisoner into close custody because he transgressed the limits, then the sheriff ought not to be made liable, unless he knows of and connives at the escape. The statute is imperative on the sheriff; and he cannot refuse the liberties to a prisoner who offers a sufficient security. If the sheriff is to be held liable for a *voluntary* escape, then he cannot resort to his bond of indemnity, and by the present form of action he would be deprived of the benefit of a .security, which the statute obliges him to accept. If the plaintiff meant to recover by virtue of the statute, he should have brought a special action founded on the statute, so that the record of recovery would be evidence in support of an action by the sheriff on his bond. But the action being for a voluntary escape at common law, the plaintiff cannot recover under any of the provisions of the statute. If there has not been a voluntary escape, then the common law doctrine of a recaption will apply, and the prisoner having returned into custody before any action was brought, the present suit cannot be maintained. It was so decided in *Dole* v. *Moulton*, in 1801. It is unnecessary to examine the doctrine of escapes. It is enough that the sheriff was obliged to suffer the prisoner to be at large within the liberties, on his giving bail ; and having no controul over him while that security was sufficient, he ought not to be made liable for a voluntary escape.

THOMPSON, J. delivered the opinion of the court. The general principles of law applicable to *escapes* are well settled ; and if the present case was to be decided, independently of our statute relative to gaol-liberties, little difficulty would be presented. It is not to be denied, that fresh pursuit and recaption before action brought, is a good defence against a *negligent escape ;* and a voluntary return of the prisoner, before action commenced, will also purge an escape of this description. (*Impey's Shff.* 181. 188. *Stra.* 423.) It is equally well settled, that there can be no recaption

after a voluntary *escape*, and that nothing will purge an escape falling under that denomination. (3 *Term Rep.* 392. 2 *Wil.* 294.) It does not, however, appear to me that this can be considered, technically, either as a voluntary, or a negligent escape. An escape is not voluntary, unless it be with the consent, or by the default of the sheriff, (2 *Term Rep.* 131.) neither of which is imputable to the sheriff, in the present case: for the statute (*Rev. Laws*, v. 1. p. 360.) is mandatory upon him, to permit the prisoner to go at large, provided he gives the security therein required. After giving the security, the sheriff has no right to restrain the prisoner, unless he shall discover his bail to be insufficient, and in such case, no longer than until good bail be offered. A negligent escape necessarily implies some neglect of duty, or default in the sheriff. Nothing of this kind, however, is chargeable upon him in the case before us, unless he had a right by force to restrain the prisoners from going beyond the gaol-liberties. And if any such power be vested in the sheriff, his neglect and default, would approach very nearly to a voluntary escape. The prisoners were in the constant habit of going beyond the limits, on *Sundays*, and this was known to the sheriff, and one of them was seen by him three miles without the liberties, and no notice taken of it. According to my view of the case, however, the sheriff is chargeable with no default, on this account, because he had no right to restrain them. That there has been an escape can admit of no doubt, but, as I before observed, it is not either a voluntary or negligent escape, within the ordinary acceptation of the terms; but an escape which, under our statute, amounts to a breach of the condition of the prisoner's bond, and renders the sheriff responsible.

The act of the 20th of *March*, 1801, (*Rev. Laws*, v. 1. p. 212.) directs, that every person who shall be arrested by virtue of an execution against his body, shall be kept in prison, in close and secure custody, and if the sheriff shall permit such person to go out of prison, *or be at large*,

without the assent of the plaintiff, he shall be answerable
for the debt for which such person was arrested or com-
mitted : And it is declared to be an escape for the sheriff
to *permit* or *suffer* a prisoner in custody on execution, to
go, or be at large out of his prison. Under this statute,
what kind of an escape would it be, if a sheriff seeing a
prisoner at large should *suffer* him to remain without re-
committing him ? It could scarcely be denominated any
other than a voluntary escape : Although he might not have
expressly assented to his going at large, at first, yet, by
voluntarily suffering him to remain at large, he thereby as-
sents to and ratifies the original escape. The act of the
30th of *March*, 1801, (*Rev. Laws*, v. 1. p. 260.) makes it
the duty of the sheriff to allow prisoners the liberties of the
gaol, on their giving a bond with sufficient sureties, the
condition of which bond is, " that such prisoner shall re-
main a true and faithful prisoner, and shall not at any time
nor in any wise escape, *or go* without the limits of the liber-
ties of the prison, until discharged by due course of law."
And the sheriff is athorised, in case he shall discover the
bail to be insufficient, to confine the prisoner, until other
sufficient bail be offered.

According to my construction of this act, the sheriff, af-
ter having taken bail, has no right to restrain the prisoner,
should he see him at large; his remedy is upon his bond.
It is a breach of the condition of this bond, for the pri-
soner to go beyond the limits, and it can be no defence to
him that he returned before suit brought against the sheriff.
This bond, it is true, is for the sheriff's indemnity only.
Nothing more, however, is to be understood by this, than
that if the plaintiff in the execution does not choose to
take advantage of this escape, the sheriff shall not. The
bond is not made assignable; the plaintiff's remedy must
therefore be, in the first instance, against the sheriff. The
act provides, that nothing therein contained shall be con-
strued to exonerate the sheriff, in case the prisoner shall
escape and go at large without the limits. Were it not,

ALBANY,
February, 1809.

Tillman
v.
Lansing.

then, for this act, how would the sheriff stand under the statement of facts in the case ? He knew that the prisoners were in the constant habit of going beyond the limits, saw one of them without the same, and suffered him to remain there, without attempting to recommit him. If he was legally vested with this power, I should strongly incline to think his neglecting to exercise it, would amount to a voluntary escape ; but it is unnecessary to go thus far. That here has been an escape in fact is not denied ; and I am satisfied that, according to the true construction of the statute, there could be no recaption, and that a voluntary return of the prisoner before suit brought, will not purge the escape.

The case of *Dole* v. *Moulton*, decided in this court in *January* term, 1801, was relied upon by the defendant's counsel, but has no application to the case. That was a suit by the sheriff upon a bond for the gaol-liberties, and the defendant pleaded specially " that he accidentally walked sixteen feet beyond the gaol-liberties, which were bounded on an imaginary line, and that he immediately and voluntarily returned, and there had remained, and which return was before suit brought." To the plea there was a demurrer, and the court held the plea to be good, because the bond was given for the sheriff's indemnity, and he could not have sustained any damage in that case, as the escape was involuntary, on the part of the prisoner, and such an *involuntary* escape, and return before suit brought, would be a good defence in a suit against the sheriff for the escape. The plea was held to be equivalent to a plea of *non damnificatus.* The case of *Currie & Whitney* v. *Henry*, (2 *Johns. Rep* 433.) is also inapplicable. That was a suit against the defendant as sheriff, for an escape, and the plea was an escape with force, and breaking of the gaol, and against the will of the sheriff, and a return into custody before suit brought. That case did not arise under the statute for creating gaol-liberties. This case is also essentially distinguishable from that of *Bonafous* v. *Walker*, (2 *Term Rep.* 126.) where it was held, that an escape from

the *King's Bench* prison, without the marshal's knowledge, was not a voluntary escape, and that a recaption on the fresh pursuit was a good plea. In that case, the prisoner, upon his return, was confined immediately in close custody, and denied the rules of the prison, and that fact was relied upon by one of the judges, as evidence that the escape was not voluntary on the part of the marshal. It was a material ingredient in that case, which does not, nor could it legally exist in the one before us, because the sheriff has no power to deprive the prisoners of the gaol-liberties, notwithstanding a previous escape, so long as they can furnish him a bond with sufficient sureties.

Making sheriffs responsible in such cases may seem to operate hardly, if they should be compelled to advance the money, before they have an opportunity of prosecuting the security they may have taken. It is a circuitous mode of getting at the security, but the statute has made this course necessary, since the bond taken by the sheriff is not made assignable. We incline, however, to think that the court would have power to stay execution against the sheriff, for the purpose of giving him a reasonable time to prosecute his bond. But the hardship of the case cannot vary the construction of the statute; the alteration, if any be necessary, belongs to another forum. The opinion of the court, therefore, is, that the plaintiff must have judgment. We have taken no notice of the objection suggested on the argument, as to the form of the action. This we consider waived by the agreement at the foot of the case.

ALBANY,
February, 1809.

Tillman
v.
Lansing.

Judgment for the plaintiff.